CR-15-00924-PHX-GMS(DKD), July 31, 2015

1                **UNITED STATES DISTRICT COURT**

2                **FOR THE DISTRICT OF ARIZONA**

3

**United States of America**,            )

4                                         )

                              Plaintiff,  )   CR-15-00924-PHX-GMS(DKD)

5                                         )   July 31, 2015

                         vs.              )   Phoenix, Arizona

6                                         )

**Erik Stephen Foster**,                  )   4:00 p.m.

7                                         )

                         Defendant.       )

8   _____)

9

**BEFORE:   THE HONORABLE EILEEN S. WILLETT, MAGISTRATE JUDGE**

10

                    **TRANSCRIPT OF PROCEEDINGS**

11

                 **DETENTION HEARING (Continued)**

12

13                   A P P E A R A N C E S

14   For the Government:

             **VINCENT Q. KIRBY, ESQ.**

15           U.S. Attorney's Office (Phoenix)

             40 N. Central, Suite 1200

16           Phoenix, AZ 85004-4408

             602.514.7500/(fax) 602.514.7650

17

     For the Defendant:

18           **LOYD C. TATE, ESQ.**

             Law Office of Loyd C. Tate

19           1921 S. Alma School Road, Suite 303

             Mesa, AZ  85210

20           480.345.1400/(fax)480.345.1531

21   Transcriptionist:

     **Elaine Cropper**

22   Sandra Day O'Connor U.S. Courthouse

     401 West Washington Street, SPC 35

23   Phoenix, Arizona  85003-2150

     602.322.7245/(fax) 602.322.7253

24

     Proceedings Recorded by Electronic Sound Recording

25   Transcript Produced by Transcriptionist

                    United States District Court

CR-15-00924-PHX-GMS(DKD), July 31, 2015

**P R O C E E D I N G S**

1

2       (Court was called to order by the courtroom deputy.)

3       (Proceedings begin at 4:00 p.m.)

4               THE COURT:  Good afternoon.  Please be seated.

5               Counsel, you need to go back to counsel table because

6   I need more information for this hearing.

7               COURTROOM DEPUTY:  On the record in 15-CR-924, *USA v.*

8   *Erik Foster,* before the Court for a continued detention

9   hearing.

10              Counsel, please state your appearances.

11              MR. KIRBY:  Vincent Kirby for the United States.

12              MR. TATE:  Good morning, Your Honor.  Loyd Tate on

13  behalf Mr. Foster, who is to my immediate right.

14              THE COURT:  Thank you.  Please be seated.

15              Mr. Foster, please be seated.

16              I reviewed carefully the indictment.  I reviewed the

17  complaint and statement of probable cause and there have now

18  been two hearings with regard to co-defendants.  But I did have

19  several questions with regard to Mr. Foster after I reviewed

20  those documents that I just stated on the record.

21              And I know that Pretrial had been doing an additional

22  check with regard to the feasibility of electronic monitoring.

23  I need to read this as well.  I need to read this as well and I

24  just got it.  But I have some questions for the Government and

25  the Government may have already stated this but I don't have it

United States District Court

CR-15-00924-PHX-GMS(DKD), July 31, 2015

1  in my notes and so I need to ask it again and also Mr. Tate.

2  All right?

3            Is this a presumption case?

4            MR. KIRBY:  Your Honor, I have to be honest with the

5  Court.  I'm here for Lisa Jennis and I do not have a copy of

6  the complaint, nor have I seen the affidavit.  She had given me

7  some directions in conjunction with the recommendations of

8  pretrial and that's how I appeared.

9            THE COURT:  Would you print it for him?

10            I need to know the minimum mandatory sentence on

11  Count 1.  I believe it is a presumption case but I want to

12  confirm that with both counsel and I need to know what the

13  minimum mandatory and the max is and Mr. Foster was indicted on

14  only one count.

15            And then I need to know what, in fact, was observed

16  by law enforcement with regard to the alleged role of this

17  particular defendant.

18            MR. KIRBY:  Your Honor, to those questions, I'm going

19  to have to ask to have this reset.

20            THE COURT:  Okay.  I'm going to give all of you all

21  of these questions so that all of can you work on all of these

22  questions, okay?

23            I want to know his alleged role.  What was actually

24  observed by law enforcement?

25            I have reviewed exhibits in Mr. Deatherage's case

United States District Court

CR-15-00924-PHX-GMS(DKD), July 31, 2015

1   that Mr. Foster appears in and that is a Facebook page it

2   appears and it appears as though Mr. Foster is responding with

3   a like to two comments that are on a Facebook page.  One of the

4   comments is, and I would quote:  We all fucking nuts but we're

5   family and that means I would hide a body for you.  There's a

6   like from an Erik Foster on that and then there is a like to

7   the statement -- and I would add that there is a picture with

8   that quote and it appears to be a picture of perhaps characters

9   in a movie or there's a picture that is attached to that quote.

10  And they are holding their -- they are armed.

11          But it is not evidence in this particular hearing.

12          MR. TATE:  I'm just asking, and forgive me, Judge.

13  I'm just asking.  Can I get the quote again?  I'm just asking

14  for it.

15          THE COURT:  Yes.  The quote is:  We all fucking nuts

16  but we're family and that means I'd hide a body for you.  And

17  those are quotes.  This appears on an exhibit to the

18  co-defendant's detention hearing.  It has a picture attached to

19  it.  It appears to be a Facebook or social media page and it

20  is -- there is a posted, quote/unquote, like with the name Erik

21  Foster.

22          And then there's another quote with a like from an

23  Erik Foster posted.  And that statement is, and it's a longer

24  one and it's, quote:  How far are you willing to go to protect

25  yourself and your family's liberties and personal freedom?  We

United States District Court

CR-15-00924-PHX-GMS(DKD), July 31, 2015

1    are not going to lose our country without a serious fight,

2    exclamation point, close quote.  Again, that is not a statement

3    by Erik Foster.  That is a statement to which he posted a like.

4          So consequently, my question is:  Does Erik Foster

5    have any known ties to the organization to which the

6    co-defendants indicated an affiliation which is -- which was

7    described as a militia group, and I believe the name of that --

8    and I would have to pull that up from the other two transcripts

9    but I believe the name of that was Arizona Special Operations.

10   I believe it was Arizona Special Operations.  So my questions

11   for both of you that I need the answers to would be:  Is this a

12   presumption case?  What is the minimum mandatory and the

13   maximum on the charges?  What is this co-defendant's alleged

14   role and what was actually observed?  Does he have any known

15   ties to the militia group that has been previously mentioned

16   from other co-defendants and was that him on the likes that I

17   just stated?

18         And I am more than happy to give both of you the

19   opportunity to address my concerns.  I have a concern.  I will

20   tell you what concerns I see with regard to this defendant.  My

21   concerns for him are that he -- the nature and circumstances of

22   this offense involve controlled substances.  I believe I have

23   heard from prior statements from the Government that he

24   allegedly drove a get-away car at high speeds.  I believe I

25   heard that he was allegedly armed but I want to know what was

1  actually seen because he's not charged with that.  I have seen

2  in the pretrial sentence report that he has used two aliases,

3  that he's unemployed.  He does have ties in Arizona for nine

4  years.  His mother has been found suitable as a third-party

5  custodian.  I have not read the most recent.  It is my

6  understanding that there are some issues with stability of the

7  residence.

8       He was honorably discharged from the army after

9  service to our country from '98 to 2003.  As a result of his

10 service, he did travel internationally.  He's been diagnosed

11 with anxiety and PTSD.  He has a history of substance abuse.

12 He was positive when he was brought in for marijuana.  He does

13 have a history of suicidal ideation.  He has no criminal

14 history.  That is what I've gleaned from what I have but my

15 concerns are what I stated initially.  I did ask that this home

16 be looked at in terms of perhaps electronic monitoring but I do

17 need the answers to those other questions, and I am more than

18 happy to place them immediately on the record as soon as you

19 guys can get the information.

20      Would you like to be heard, Mr. Tate?

21      MR. TATE:  Yes, Judge, and again, I am at a -- in all

22 candor to the Court, do I believe it's a presumption case?

23 Yes, Judge, I do believe it's a presumption case for what the

24 Government is alleging the amount of cocaine mixture and

25 cocaine base.  In all of my experience, would I right now want

CR-15-00924-PHX-GMS(DKD), July 31, 2015

1  to go back and just refresh but in my experience, it would be a

2  presumption case.

3          I am at a real disadvantage as to some of this

4  because the Government has had a chance to go through some

5  discovery and I have had a chance to go through minimal, but

6  the Government has alerted me -- I had a family emergency I had

7  to deal with as soon as I left here.  But the Government has

8  alerted me that I'm going to pick up 35 or 36 discs from them.

9  And so that's why, one, while you were quoting I'm furiously

10 trying to write down but I have no idea, Judge, right now where

11 to go and go, "Okay.  Yeah, I know where that's at," and I can

12 go to look and see that.

13         So that's the only thing I want to voice at the Court

14 is it would take me some time, and I probably would be relying

15 on Mr. Jennis to direct my attention, help me out, because I

16 just don't know where a lot of this stuff that the Court was

17 going to -- I don't know where it is.

18         THE COURT:  I can certainly appreciate that,

19 Mr. Tate, and I know that I realize that you may need then

20 time.  I can certainly appreciate that.  And the Government has

21 indicated that it needs time as well.

22         MR. KIRBY:  Yes, Your Honor.  As I indicated,

23 Ms. Jennis is not here.  She obviously will have a whole lot

24 more information and certainly can help Mr. Tate in that regard

25 since I assume she's been attached to at least the other

United States District Court

CR-15-00924-PHX-GMS(DKD), July 31, 2015

1    hearings that the Court has referred to.  So I would ask for a

2    date next week.  Is the Court going to -- is the Court going to

3    keep --

4             THE COURT:  I would.  Since I have heard part of this

5    hearing, it makes sense for me to keep the rest of it.  I would

6    continue it onto my calendar on Tuesday, August 4, at 1:30.  I

7    can hear it as soon as Tuesday.

8             Do you need to call your offices for the scheduling?

9    You can do so.

10            MR. TATE:  I don't, Judge.  The only thing I have is

11   the Ruiz-Hernandez change of plea in your Court at 2 o'clock.

12            THE COURT:  Oh.  Then you'll be fine.  You can't

13   start without me and you'll know that I will be here.

14            MR. TATE:  Judge, can I have one moment?

15            THE COURT:  Absolutely.

16       (Defendant confers with counsel.)

17            MR. TATE:  Yes, Judge.  That Tuesday would be fine.

18            THE COURT:  And will the Government be available at

19   that time?

20            MR. KIRBY:  As far as I know, Your Honor.

21            THE COURT:  All right.  Then I'll continue this

22   matter for further hearing for the information that the Court

23   requests.  In addition, the Court has the information from

24   Pretrial Services.

25            Would you like to add anything?

United States District Court

CR-15-00924-PHX-GMS(DKD), July 31, 2015

1          PRETRIAL OFFICER:  No.  Your Honor.  Nothing further.

2          THE COURT:  And did anyone have any questions with

3   regard to Pretrial Services before I let them go?

4          MR. KIRBY:  No, Your Honor.

5          MR. TATE:  No, Your Honor.

6          THE COURT:  All right.  Thank you.

7          Thank you very much.

8        (Proceedings concluded at 4:15 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

United States District Court

CR-15-00924-PHX-GMS(DKD), July 31, 2015

1

2

3

4                    C E R T I F I C A T E

5

6          I, ELAINE M. CROPPER, court-approved transcriber,

7    certify that the foregoing is a correct transcript, to the

8    best of my skill and ability, from the official electronic

9    sound recording of the proceedings in the above-entitled

10   matter.

11

12          DATED at Phoenix, Arizona, this 19th day of January,

13   2017.

14

15

16

17                                        s/Elaine M. Cropper

18                            _____

19                                        Elaine M. Cropper

20

21

22

23

24

25

                    United States District Court